**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BRYAN HOLLOWAY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:12-CV-2184-G (BH)** |
| | § | |
| **WELLS FARGO BANK, N.A., et al.,** | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management.

Before the Court for recommendation is *Defendant's Motion to Dismiss Plaintiff's Original Petition and Brief in Support*, filed August 14, 2012 (doc. 6).  Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I.  BACKGROUND

This action arises out of an attempted foreclosure of real property located at 905 Dawson Street, Cedar Hill, Texas 75104 (the Property).  (doc. 1-6 at 1.)[1]  On June 27, 2012, Bryan Holloway (Plaintiff) filed this *pro se* action against Wells Fargo Bank, N.A. (Defendant) and Maris L. Patton, R. Alcorn, and J. Frappier of the law firm of Barrett, Daffin, Frappier, Turner & Engel, LLP, "as substitute trustees" (the substitute trustees).[2]  He sought to enjoin the foreclosure sale of the Property that was scheduled to take place on July 3, 2012.  (*See id.*)

In his verified state court petition, Plaintiff alleges that he purchased the Property on May 15, 2000, with a promissory note in favor of North Texas Residential Mortgage Corporation

---

[1]  Citations to the record refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  Plaintiff has not shown that he served the substitute trustees with a state court citation and they have not answered his complaint or otherwise appeared in this case.

(NTRMC) and a deed of trust securing the note.  (*Id.* at 2.)  The note and deed of trust named NTRMC as the "Lender," and the deed of trust identified it as the beneficiary under the deed of trust.  (docs. 1-6 at 29; 7-1 at 2.)  "Sometime in August or September 2000," Defendant purportedly notified Plaintiff that it was servicing his mortgage and that "the right to collect payments" from him had been transferred to it from NTRMC.  (doc. 1-6 at 4.)

"Sometime in 2008, Plaintiff suffered from financial hardships" and fell "a little behind" on his mortgage payments.  (*Id.* at 5.)  Wanting to "preserve [his] ownership of the Property," he "reached out to Defendant" to inquire about "several default-curing options available to him."  (*Id.*)  Defendant allegedly "never offered to have a face-to-face meeting with Plaintiff, but rather, advised him to send in ... financial information and [to] complete a hardship application."  (*Id.* at 5–6.)  "[S]ometime around August [or] September 2008, Defendant sent [him] a Loan Modification Agreement" that "called for payments of $1,263.37, beginning [on] October 1, 2008."  (*Id.* at 6.)  The modification agreement was filed with the Dallas County Clerk's Office.  (*Id.*)

Also in 2008, Defendant executed a document appointing substitute trustee.  (*See id.* at 38.)  The appointment was signed by Stephen C. Porter, Defendant's "vice president [of] loan documentation" (the vice president), and was filed with the Dallas County Clerk's Office.  (*See id.* at 4, 38.)  According to Plaintiff, the vice president was a "robo" signer, "documents containing his signature ... [were] most likely ... forgeries", and the appointment was "invalid and fraudulent" because the vice president and "many of those employed" by his law firm "[were] known to execute documents without proper legal authority to do so."  (*Id.* at 4, 15–16.)  Moreover, "even if the appointment was not illegally 'robo-signed,'" it was still "invalid and fraudulent" because neither "[Defendant] nor [the vice president] had the legal authority to execute [it]," given that only

NTRMC, the original lender, had that authority. (*Id.* at 16.) Plaintiff contends that because the appointment was fraudulent, the substitute trustees were "not Parties of Interest and ha[d] no legal right" to foreclose on the Property. (*Id.* at 4.)

Plaintiff alleges that on July 31, 2009, Defendant and the U.S. government, acting "through Fannie Mae," "entered into [a] Servicer Participation Agreement (SPA), which [was] a valid and enforceable contract." (*Id.* at 19.) By "entering into the SPA," Defendant purportedly "agreed to comply" with its requirements and with all applicable guidelines under the Home Affordable Modification Program (HAMP) in exchange for financial incentives from the federal government. (*Id.*) He contends that "Defendant['s] servicing guidelines clearly show that it participates in the MHA [Making Home Affordable] initiative, and that it has adopted the guidelines set forth in the Handbook for Servicers of Non-GSE Mortgages (the Handbook)." (*Id.* at 9.) The Handbook "informs servicers what options to give to borrowers" to cure a default, including "modification under HAMP," "Lender Proprietary Modification," and "Home Affordable Foreclosure Alternatives, [such as] a short sale and deed-in-lieu of foreclosure." (*Id.* at 9–10.) He contends that Defendant breached the SPA and its own servicing guidelines by failing to provide him with foreclosure and loss-mitigation alternatives. (*Id.* at 7–10.)

In May 2011, "Plaintiff again began experiencing financial difficulties" and contacted Defendant to ask "for help." (*Id.* at 6.) Defendant "advised [him] to apply for consideration for modification under HAMP" and "[t]o-wit, [he] complied." (*Id.*) At some point, Defendant also offered to "consider [him] for ... other alternative loss mitigation options" and represented that it would "help save his homestead Property from foreclosure." (*Id.* at 15.) As of the date Plaintiff filed suit, Defendant "continued to request ... repetitive documentation, but … failed to provide an

answer" about his HAMP application.  (*Id.* at 6.)  He "had to reapply" for the HAMP program due to "Defendant losing [his] documents."  (*Id.*)

According to the complaint, on April 4, 2012, Defendant "entered into a Consent Judgment" with the U.S. government, undertaking numerous obligations, such as providing borrowers with certain information upon their request and offering them "loss mitigation options prior to foreclos[ing]" on their property.  (*Id.* at 7.)  Plaintiff contends that Defendant breached the Consent Judgment by failing to "present all loss mitigation[] options to [him] prior to the acceleration of the note and posting ... the Property for foreclosure sale."  (*Id.* at 10.)

Plaintiff alleges he sent "via certified mail, a qualified written request" (QWR) to Defendant on May 30, 2012, requesting that it "produce lawful documents showing a valid perfected security instrument existed and copies of ... documents showing all of the transfers and assignments of the Original Deed of Trust and the Original Note."  (*Id.* at 5.)  This was to verify that Defendant was the "Holder in Due Course" of the note and was "properly assigned the Debt as required by Texas Law."  (*Id.*)  As of the date he filed suit, no "such production [had] been made."  (*Id.*)

"On or about June 13, 2012," the substitute trustees, as "agents for [Defendant]," notified Plaintiff  "that his Note had been accelerated[,] ... that all sums secured by the Deed of Trust were immediately due," and that the Property "was scheduled to be sold on July 3, 2012."  (*Id.* at 6.)  He currently disputes Defendant's "right to request that payments be made to [it]," contending that "no proper and legal assignment" of the note and deed of trust "was granted to Defendant."  (*Id.* at 4.)  He claims that Defendant was a "[third] party debt collector," "pretending to be the mortgagee and/or lender-servicer," and it "failed to adhere to the Fair Debt Collection Practices Act as all [third] party debt collectors are required."  (*Id.*)

Plaintiff claims that Defendant lacked authority to foreclose because it was not the "holder" and was not "properly assigned the rights of the original Note." (*Id.* at 5.) Additionally, a "severance of the ownership and possession of the original Note and Deed of Trust most likely … occurred," and he therefore questions the "identity" of "the true owner and holder" of those documents. (*Id.*) Due to a "broken chain of assignments," the deed of trust was rendered "void and unenforceable, pursuant to UCC 3-201, 3-203 & 3-302", he claims. (*Id.*)

Plaintiff also contends that NTRMC and Defendant had "a duty to record an assignment of the mortgage in the public records" "in accordance with Texas Local Government Code § 192.007." (*Id.*) Because no assignment was ever recorded, and because Defendant did not provide "any proof" that it was the holder in due course of the note or that it was "duly appointed as representative of the actual holder," NTRMC "appear[ed] to be the only, actual Holder of the Note." (*Id.* at 5–6.) Consequently, Defendant "ha[d] no legal authority to foreclose." (*Id.* at 6.) Defendant also lacked "the legal authority" to accelerate and collect on the note. (*Id.* at 23.) Moreover, Plaintiff contends that because the assignment of the note and deed of trust was "not properly recorded," Defendant could not issue "proper" notices of acceleration and foreclosure as required by the Texas Property Code. (*Id.*)

Plaintiff explicitly asserts claims for breach of contract, breach of the duty of good faith and fair dealing, suit to quiet title, and violations of the Texas Debt Collection Practices Act (TDCPA), the federal Fair Debt Collection Practices Act (FDCPA), the Texas Deceptive Trade Practices Act (DTPA), the Texas Property Code, the Texas Business and Commerce Code (the UCC), the National Housing Act (NHA), and its accompanying regulations promulgated by the U.S. Department of Housing and Urban Development (the HUD regulations). (*Id.* at 7–25.) He also appears to assert

claims for wrongful foreclosure, trespass to try title, breach of a unilateral contract, promissory estoppel, and violations of the Real Estate Settlement Practices Act (RESPA). (*See id.*) He seeks actual, statutory, and punitive damages, as well as compensation for mental anguish and declaratory and injunctive relief. (*Id.* at 25–27.) He also asserts the defenses of waiver, quasi-estoppel, and unclean hands against Defendant's acceleration and foreclosure. (*Id.* at 13–16.)

On July 10, 2012, Defendant removed the action to this Court on the basis of diversity jurisdiction. (doc. 1.) On August 14, 2012, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim. (doc. 6.) Plaintiff did not respond to Defendant's motion. The motion is now ripe for consideration.

## II. RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) arguing that "he is not entitled to any relief" because he "fails to state a claim as a matter of law under any cause of action." (doc. 6 at 9–10.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v.*

*Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id.* In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. Pleadings in the 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data*

*Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Plaintiff has attached to his complaint copies of what he contends are the deed of trust, the QWR he sent Defendant, the appointment of substitute trustee, correspondence from the substitute trustees, and the notice of foreclosure. (*See* doc. 1-6 at 29–45.) These documents are part of the pleadings because they are attached to the complaint. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Additionally, Defendant has attached to its motion to dismiss a copy of what it contends is the promissory note. (*See* doc. 7-1 at 2–4.) Because the note is referenced in Plaintiff's complaint and is central to his claims, it is considered part of the pleadings. *See Collins*, 224 F.3d at 499. Because the documents attached to the complaint and to the motion to dismiss are considered part of the pleadings, conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

# III.  ASSIGNMENT CLAIMS

Defendant contends that Plaintiff's claims for quiet title and violations of the TDCPA, the FDCPA, the Texas Property Code, and the UCC are subject to dismissal because he relies on "rejected [legal] theories" concerning the assignment of his mortgage.  (*See* doc. 6 at 9–10, 28–33.) These legal theories include his claims 1) that Defendant lacked "authority" to foreclose because it was not the "holder in due course" of the note and was not "properly assigned" the note and deed of trust; 2) that the identity of the "true owner and holder" of these documents was "questionable" and the deed of trust was rendered "void and unenforceable"due to "a severance" of the note and deed of trust and "a broken chain of assignments"; and 3) that Defendant could not foreclose because it failed to record any assignment of the mortgage.  (*See* doc. 1-6 at 4–6, 11, 23–24.)

## A.    Lack of Standing

Defendant contends that Plaintiff lacks standing[3] to challenge the assignment of the note and deed of trust because he was not a party to the assignment, and he therefore fails to state a claim for violations of the TDCPA.  (doc. 6 at 28–29.)

Numerous district courts in Texas have held that "borrowers do not have standing to challenge the assignments[4] of their mortgages because they are not parties to those assignments."

---

[3]  "Standing has both constitutional and prudential aspects."  *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 n.9 (5th Cir. 2001) (citation omitted).  The argument that non-parties lack standing to challenge an assignment of a deed or note implicates prudential standing.  Prudential standing encompasses "[j]udicially created limits" that concern whether: (1) a plaintiff's grievance falls within the zone of interests protected by the statute invoked, (2) the complaint raises a generalized grievance more properly addressed by the legislature, and (3) the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties. *Id.*; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  "Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011).

[4]  "[A]n assignment is a contract between the assignor of a right and an assignee, who receives the authority to assert that right." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex.  App.—El Paso 2010,

*Kidd v. Fed. Nat. Mortg. Ass'n*, No. 3:12-CV-1733-B, 2012 WL 4900962, at *2 (N.D. Tex. Oct. 15, 2012) (collecting cases). Some district courts have recognized two exceptions, however: (1) the "primary exception" is "where an assignee of a claim sues the obligor for performance under ... circumstances, ... render[ing] the assignment void, ... [but not] voidable"[5]; and (2) "under very limited circumstances, Texas law allows a defendant sued on a negotiable instrument to assert defenses and claims held by others." *Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at *4–5 (W.D. Tex. May 15, 2012) (citing to *Tri–Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) and Tex. Bus. & Com. Code § 3.305(c)); *see also Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012); *Miller*, 2012 WL 3206237, at *5. Notably, only a void assignment may be challenged "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice."[6] *Tri–Cities Const., Inc.*, 523 S.W.2d at 430 (citation omitted). In *Kramer*, the court held that the plaintiff could not challenge the assignment of the deed of trust because neither exception

---

pet. denied); *accord D Design Holdings, LP v. MMO Corp.*, 339 S.W.3d 195, 200–01 (Tex. App.—Dallas 2011, no pet.).

[5] "Examples of 'voidable' defenses include the statute of frauds, ... fraud in the inducement, ... lack of capacity as a minor, ... and mutual mistake." *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012); *see also* Tex. Bus. & Com. Code Ann. § 3.202(a) (West 2002) (listing voidable defenses against the enforcement of a negotiable instrument).

[6] With respect to the assignment of a mortgage, "[a] void contract of assignment confers no right to foreclose under the deed on the purported assignee while a voidable contract transfers the deed to the assignee—including the rights contained in it—subject to the rights of the assignor to set it aside upon proof the contract was executed improperly." *Puente*, 2012 WL 4335997, at *6 n. 14 (citing to *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 674 (Tex. 1942); *see also Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.) (explaining that if the assignment is "absolutely invalid or ineffective," "[a] debtor may … assert against the assignee … [his] lack of title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his shoes.") (quoting 6A C.J.S. Assignments § 132) (database updated December 2012).

applied, given that in foreclosing on his property, the "Defendants did not sue [the plaintiff] at all, and, even if they had, their suit would have been on the deed of trust, not the ... promissory note … [and] there [was] no suggestion [he] [was] being put in a position where he [would] have to pay the same claim twice." *Kramer*, 2012 WL 3027990, at *5.

Here, Plaintiff avers only that the note and deed of trust were "not properly assigned" to Defendant and that there was a "broken chain of assignments." (doc. 1-6 at 4–5.) As in *Kramer*, however, he does not allege that he was sued on the note or was put in a position where he will have to pay the same claim twice. *See Kramer*, 2012 WL 3027990, at *5. He also fails to allege that NTRMC never assigned the note and deed of trust to Defendant, or any facts showing that an assignment did take place but was somehow void or voidable.

Plaintiff fails to allege sufficient facts from which it could be determined that he has standing to challenge the assignment of the note and deed of trust from NTRMC to Defendant. *See Puente*, 2012 WL 4335997, at *6 (holding that the court could not determine whether the plaintiffs had standing to challenge the assignment of the deed of trust because it was "unclear from [their] complaint whether they allege[d] (1) that the assignment ... [was] *voidable* because, for example, ... the procedures ... employed were faulty, or (2) that the assignment was *void* and therefore invalid") (emphasis in *Puente*). To the extent that Plaintiff bases any of his claims, including his TDCPA claim, on his "improper assignment" and "broken chain of assignments" theories, these are all subject to dismissal for failure to state a claim. *See Kidd*, 2012 WL 4900962, at *2 (dismissing quiet title claim where the plaintiff's theories for recovery were "based entirely on assignments and agreements to which [she] was not a party" and where she "[had] not ... alleged that multiple parties ha[d] attempted or [would] attempt to collect from [her]").

## B.     "Show-me-the-Note" Theory

Defendant moves to dismiss Plaintiff's claims for quiet title and violations of the TDCPA, the FDCPA, the Texas Property Code, and the UCC for failure to state a claim because they are based on his invalid "show-me-the-note" theory.[7]  (*See* doc. 6 at 28–33.)

Plaintiff's allegation that Defendant was required to produce the note before foreclosing implicates what is commonly referred to as the "show-me-the-note" theory.  *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012).  "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure."  *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted).  The theory has been repeatedly rejected in this circuit.  *Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (Fitzwater, C.J.) (collecting cases).[8]

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note."  *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July

---

[7]  While the Table of Contents to Defendant's brief only lists this defense in connection with the TDCPA claim, Defendant also briefly asserted it as a ground for dismissal with respect to Plaintiff's claims for violations of the FDCPA, the Texas Property Code, and the UCC, as well as his claim for quiet title.  (*See* doc. 6 at 31–33.)

[8]  Plaintiff's allegation that the deed of trust was rendered void and unenforceable due to its severance from the note implicates the "split the note" or "bifurcation" theory.  *See Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) (explaining that the plaintiff's "split the note" theory was based on its argument that because "MERS never held the Note ... its assignment of the Deed of Trust  ... ha[d] no force or effect"); *see also Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) ( "[The] bifurcation theory originates in the concept that a note has no separate existence from its security, and an assignment of the security alone is a nullity.")  This theory appears to be a variation of the "show-me-the-note" theory, as it claims that possession of the note is a prerequisite to foreclosure.

25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property."  *Bierwirth*, 2012 WL 3793190, at *3 (citation omitted).  In cases where the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument."[9]  *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note."  *Reardean*, 2011 WL 3268307, at *3.

The Texas Property Code allows mortgagees and mortgage servicers to conduct a non-judicial foreclosure sale "under a power of sale conferred by a deed of trust or other contract lien."  Tex. Prop. Code Ann. § 51.002 (West 2007).  The Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record."  *Id.* § 51.0001(4)(A),(C).  It defines "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."  *Id.* § 51.0001(3).  A mortgagee may be its own mortgage servicer.  *Id.*

Courts have held that the Texas Property Code does not require a mortgagee to produce proof of ownership of the original note or deed of trust before conducting a non-judicial foreclosure sale.

---

[9]  Plaintiff contends that Defendant violated the UCC by "collecting" on the note through foreclosure without first proving that it was the "holder in due course" of the note.  (doc. 1-6 at 23.)  Although listed as a separate claim, this allegation is part of his "show-me-the-note" theory.  (*See id.* at 4–6.)  His reliance on the UCC is misplaced because it addresses only the enforceability of negotiable instruments, and foreclosure is conducted pursuant to the deed of trust, which is a contract.  *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of a negotiable instrument); *see also Kramer*, 2012 WL 3027990, at *7 (explaining that "the authority to conduct a foreclosure under Texas law is governed by an entity's relationship to the deed of trust, rather than the associated note").

*See, e.g.*, *Bennett*, 2012 WL 2864751, at *3; *Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (citations omitted); *Cole v. Fed. Home Loan Mortg. Corp.*, No. 3:11-CV-1833-M-BK, 2012 WL 555194, at *2 (N.D. Tex. Jan. 23, 2012), *recommendation adopted*, 2012 WL 556055 (N.D. Tex. Feb. 21, 2012). As the statute provides, being the "holder" of a security instrument is only one of several ways to prove mortgagee status. *See* Tex. Prop. Code § 51.0001(4)(A),(C). A mortgage servicer may also administer a non-judicial foreclosure sale on behalf of a mortgagee if the two entities enter into a servicing agreement and provide the borrower with certain disclosures. *See id.* § 51.0025. As courts have noted, however, no provision of § 51.0025 "require[s] the mortgage servicer to be the 'holder' of the Note and Deed of Trust or to produce the original loan documents." *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *recommendation adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy*, 2012 WL 840909, at *10 (explaining that § 51.0025 of the Texas Property Code "contemplates that someone other than the holder of the original [security instrument] may lawfully foreclose on the security interest").

Accordingly, Plaintiff's allegation that Defendant was required to produce the "original note" prior to foreclosing cannot support any claim against Defendant as a matter of law. *See Islamic Ass'n*, 2012 WL 2196040, at *2. Likewise, his allegation that Defendant (as the servicer of his mortgage) could not foreclose because "the debt" was never "properly assigned"[10] to it contravenes Texas law. *See Darocy*, 2012 WL 840909, at *10. To the extent that he bases his claims for quiet title and violations of the TDCPA, the FDCPA, the Texas Property Code, and the UCC on these

---

[10] Plaintiff's contention that Defendant had a legal duty to record the assignment of the note and deed of trust is without merit because "recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments." *Bennett*, 2012 WL 160555, at *4 (citations omitted).

allegations, they are all subject to dismissal for failure to state a claim.

## C.    TDCPA

Defendant also moves to dismiss Plaintiff's claim under the Texas Debt Collection Practices Act (TDCPA) for failure to allege any facts "indicating that [Defendant] engaged in conduct prohibited by the TDCPA," or that the foreclosure was a "threat" to take an action prohibited by law, given that Defendant "ha[d] a contractual right to foreclose on the Property."  (doc. 6 at 26–27.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers."  *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *recommendation adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  The Act defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection."  Tex. Fin. Code Ann. § 392.001(6) (West 2006).  "Debt collection" is defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."  *Id.* § 392.001(5).  Debt collection can include "actions taken in foreclosing real property."  *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *see also Puente*, 2012 WL 4335997, at *6 ("attempted or actual foreclosure can violate [the] [T]DCPA").  Defendant's attempt to foreclose on the Property may therefore fall within the purview of the TDCPA.  *See Sanghera*, 2012 WL 555155, at *7.

### 1.    *Sections 392.303(a) and 392.304(a)*

Section 392.303(a) prohibits a debt collector from using "unfair or unconscionable means that employ [certain prohibited] practices" during debt collection.  Tex. Fin. Code Ann. § 392.304(a) (West 2005).  During debt collection, or obtaining information concerning a consumer, subsection

392.304(a)(14) prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs ... representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business."  Tex. Fin. Code Ann. § 392.304(a) (14) (West 2004).  Subsection 392.304(a)(19) "operates effectively as a 'catch-all' provision, prohibiting a debt collector from 'using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.'" *Sanghera*, 2012 WL 555155, at *8.[11]  For a party's statement to constitute a misrepresentation under the TDCPA, that party "must have made a false or misleading assertion." *Id.* at *9.

Plaintiff argues that Defendant "provided no evidence" that it was the "holder in due course" of the note, and it "engaged in actions to collect on the note" which were "fraudulent, deceptive and/or misleading representations, actionable under ... §§ 392.303 and 392.304." (*See* doc. 1-6 at 12.)  He claims that Defendant made "misrepresentations and omissions of material facts [*sic*] that induced [him] to apply for a HAMP modification" and made "misrepresentations and omissions of material facts [*sic*] regarding the status of [his] modification application." (*Id.* at 13.)  As a result, he "suffered injury and lost money" in the form of "increased interest, longer loan payoff times, higher principle [*sic*] balances, and payment of other charges." (*Id.*)  These allegations do not appear to implicate § 392.303(a) because Plaintiff alleges no facts showing that Defendant made the alleged misrepresentations "during debt collection," i.e., the foreclosure or attempted foreclosure; he alleges that he approached Defendant to ask "for help" when he experienced "financial difficulties" in May 2011. (*See id.* at 6.)  With respect to § 392.304, even if Defendant obtained

---

[11]  Plaintiff does not identify a specific subsection of §§ 392.303(a) or 392.304(a) that Defendant allegedly violated. (*See* doc. 1-6 at 12–13.)  While no subsection of § 392.303(a) seems applicable to his allegations, his discussion of the facts appears to implicate subsections (14) and (19) of § 392.304(a). (*See id.* at 13.)

information about him by inducing him to apply for a HAMP modification, he fails to identify the "false" or "misleading" assertions that Defendant purportedly made in violation of subsections (14) and (19). (*See id.* at 6, 12–13); *see also Sanghera*, 2012 WL 555155, at *9. He therefore fails to meet the pleading standards of *Iqbal*. *See Iqbal*, 556 U.S. at 678. His claim under §§ 392.303 and 392.304 should be dismissed for failure to state a claim.

### 2. Subsection 392.301(a)(8)

Subsection 392.301(a)(8) provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ ... threatening to take an action prohibited by law." Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006).

Here, Plaintiff alleges that Defendant "threatened ... to foreclose on the [Property] ... without properly considering" his applications under HAMP "or other loss mitigation alternative[s]." (doc. 1-6 at 12.) He claims that Defendant was "prohibited from moving forward with a foreclosure sale until" all loss mitigation options were "exhausted," as was required by the Handbook and the Consent Judgment. (*Id.*) These allegations could not plausibly entitle him to relief under § 392.301(a)(8) because he does not allege any facts showing that either the Handbook or the Consent Judgment constituted legal authority governing foreclosure proceedings. *See Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1059043, at *7 (S.D. Tex. Mar. 28, 2012) (dismissing claim under § 392.301(a)(8) because the plaintiffs did not allege that HAMP was "anything more than mere guidelines" or that it "prohibit[ed] or create[ed] prerequisites to foreclosure"). Moreover, while Plaintiff contends that Defendant was "prohibited" from foreclosing, he does not allege that he was current on his mortgage payments, and he admits that he experienced "financial difficulties and contacted Defendant ... for help" in May 2011. (doc. 1-6 at 6.) Because

17

Plaintiff fails to plead facts showing that Defendant took or threatened to take an action prohibited by law, his claim under § 392.301(a)(8) should be dismissed. *See Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012) (holding that "foreclosure or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on [his] mortgage"); *Burr*, 2012 WL 1059043, at *7 (dismissing claim under § 392.301(a)(8) because the "foreclosure on [the plaintiffs'] home after [they] admittedly defaulted on their mortgage loan [was] not an action prohibited by law").

## D.     FDCPA

Defendant next argues that Plaintiff also fails to state a claim under the Fair Debt Collection Practices Act (FDCPA) because he does not allege any facts showing that Defendant was a "debt collector" as defined by the Act.  (doc. 6 at 30–31.)

The FDCPA "is designed 'to eliminate abusive debt collection practices by debt collectors.'" *Watson v. Aurora Loan Services LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)).  It "prohibits a 'debt collector' from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *recommendation adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing 15 U.S.C. §§ 1692e and1692f).  Debt collectors are also required to provide a proper validation notice of a consumer's rights and to refrain from engaging in collection activities or communications which "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt" within the 30 days allowed for disputing the debt.  15 U.S.C.A. § 1692g(a) and (b) (West 2010).

Under the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly." *Garcia*, 2012 WL 3847362, at *6 (citing *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)). "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities." *Id.* (citing *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007)).

The complaint alleges that Defendant violated the FDCPA by "failing to provide the Original Note and Deed of Trust" that Plaintiff requested in his QWR, and that it had "no authority to collect on the Note" because it was not a "Holder in Due Course," so its collection actions were "there[fore] fraudulent, deceptive, and/or misleading representations and in direct violation of the FDCPA." (*See* doc. 1-6 at 11.) These bare and conclusory allegations fail to show that Defendant was either engaged "in any business the principal purpose of which [was] the collection of any debts" or that it "regularly collected or attempted to collect ... debts." *See* 15 U.S.C. § 1692a(6). Without more, these allegations fail to meet the *Iqbal* pleading standards. His FDCPA claim therefore fails and should be dismissed with prejudice.

### E. Violations of the Texas Property Code (Wrongful Foreclosure)

Defendant also moves to dismiss Plaintiff's claim for violations of the Texas Property Code to the extent that it is based on his allegation that "assignments of the Deed of Trust must be

recorded." (doc. 6 at 31–32.) Plaintiff's contentions that Defendant could not accelerate and collect on the note or issue the "proper" notices of "default and foreclosure" under the Texas Property Code because it was not the holder in due course of the note, and because the assignment of the note and deed of trust was "not properly recorded," may be liberally construed as stating a claim for wrongful foreclosure for failure to send the requisite notices under Chapter 51 of the Texas Property Code rather than a stand-alone claim under the Texas Property Code.[12]

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure

_____

[12] To conduct a lawful foreclosure in Texas, a mortgagee or mortgage servicer "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law." *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citing *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982)). "Texas law requires two primary notices in the foreclosure context: a notice of default, and a notice of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *4 (N.D. Tex. July 12, 2012). Prior to issuing the notice of sale, the mortgagee or mortgage servicer must provide to the debtor written notice of default and intent to accelerate, and must give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d).

proceedings." *Matthews*, 2011 WL 3347920, at *2.  Nevertheless, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Plaintiff's allegation that Defendant could not accelerate or collect on the note or issue the notices of default and sale because it was not the holder of the note cannot support a wrongful foreclosure claim as a matter of law.  *See Islamic Ass'n*, 2012 WL 2196040, at *2.  Likewise, his contention that assignments of the mortgage must be recorded as a prerequisite to foreclosure also fails to state a viable claim as a matter of law.  *See id.* ("[T]he ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of [the] deed of trust is either prepared or recorded.") (citation omitted); *see also Bennett*, 2012 WL 2864751, at *4 (holding that the plaintiff's "assertion that [the defendant] was not entitled to foreclose or send the notice of sale because it failed to file any assignment in the real property records ... [had] no merit").  Accordingly, any wrongful foreclosure claim fails and should be dismissed with prejudice.[13]

## F.    Suit to Quiet Title and Trespass to Try Title

Defendant also moves to dismiss Plaintiff's quiet title claim, contending that it is "equivalent to a trespass-to-try-title action" because he claims that Defendant's lien on the Property "constitute[d] an adverse interest to Plaintiff's title."  (doc. 6 at 32-33.)

---

[13]  Plaintiff remained in possession of the Property as of the date he filed suit, and his petition seeks injunctive relief to prevent Defendant from foreclosing on and taking possession of the Property.  (*See* doc. 1-6 at 24–25.)  Any wrongful foreclosure claim therefore fails for this additional reason.  *See Everhart v. CitiMortgage, Inc.*, No. CIV.A. H-12-1338, 2013 WL 264436, at *7 (S.D. Tex. Jan. 22, 2013) (dismissing wrongful foreclosure claim where the plaintiff remained in possession of the property because "recovery under a wrongful foreclosure claim is based on the mortgagor's [lost] possession") (citing *Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.)); *Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law.").

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd*, 880 F. Supp. 2d at 766 (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67(citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2000). This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted). To prevail, a plaintiff must either: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not

abandoned." *Hurd*, 880 F. Supp. 2d at 767 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)). As with a suit to quiet title, the plaintiff "must recover upon the strength of his own title and not the weakness of the defendant's title." *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Plaintiff alleges that he is "entitled to the equitable remedy of quiet title" because Defendant's "improper and illegal foreclosure" "unjustly" jeopardized his title and deprived him of his "rights to quiet enjoyment" of the Property. (doc. 1-6 at 24.) To establish his superior title and challenge any claim to the Property by part of Defendant, he states that Defendant is not the holder in due course of the note and that its lien on the Property "constitutes an adverse interest to [his] title." (*Id.*) These conclusory allegations fail to raise a reasonable inference that Plaintiff has superior title or that Defendant's claim to the Property is invalid or unenforceable. Accordingly, his suit to quiet title and any trespass to try title claim should be dismissed for failure to state a claim. *See Cole*, 2012 WL 555194, at *3 (dismissing quiet title and trespass to try title claims that were entirely premised on the plaintiff's allegation that the defendant was not the holder of the note and therefore not "entitled to enforce the Deed of Trust").[14]

## IV. BREACH OF CONTRACT CLAIMS

### A. Breach of Contract Claim

Defendant contends that "Plaintiff's breach of contract claim should be dismissed because [he] does not—and cannot—allege the facts necessary to establish" this cause of action, he was "not a party to the Consent Judgment, the SPA, or [Defendant's] servicing guidelines," and he "fails to

---

[14] Plaintiff does not allege that he has lost possession of the Property to Defendant, and he seeks injunctive relief to prevent Defendant from "mov[ing] forward with the foreclosure sale" and taking possession of the Property. (doc. 1-6 at 25.) Any trespass to try title claim therefore fails for this additional reason.

assert—in a non-conclusory fashion—that any agreement provides that he was a third-party beneficiary of that agreement."[15]  (doc. 6 at 16-17.)  Plaintiff's breach of contract claim is premised on Defendant's alleged breached of the SPA, the Consent Judgment, and its own servicing guidelines, not on breach of any contract with him.[16]  (doc. 1-6 at 7–10, 19–20.)

In Texas, "establishing a third-party beneficiary claim is a difficult burden; there is a presumption against the finding and enforcement of third-party beneficiary agreements." *Burr*, 2012 WL 1059043, at *6 (citing *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App.—Dallas 1988, writ denied)).  A third-party may enforce a contract only "when the parties to the contract entered the agreement with the clear and express intention of directly benefitting the third party." *Strange v. Flagstar Bank, FSB*, No. 3:11-CV-2642-B, 2012 WL 987584, at *2 (N.D. Tex. Mar. 22, 2012) (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).  In determining the parties' intent, "Texas courts presume that parties contract only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out." *Cade v. BAC*

---

[15]  Defendant also contends that Plaintiff's claims for breach of an express contract and breach of the duty of good faith and fair dealing are preempted by the National Banking Act (NBA) and its accompanying regulations.  (doc. 6 at 13.)  The U.S. Supreme Court has held that a national bank remains subject to state laws of general applicability, such as usury laws, contract laws, and laws relating to the "acquisition and transfer of property," so long as these laws do not "prevent or significantly interfere with the national bank's ... exercise of its powers." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) (citations omitted).  The Office of the Comptroller of the Currency (OCC), which is charged with "supervis[ing] and regulat[ing] federally chartered banks [under] the NBA," *Wells Fargo Bank of Texas NA v. James*, 321 F.3d 488, 490 (5th Cir. 2003), has identified nine areas of state law, including contracts, torts, and debt collection, that are not preempted by the NBA as long as they only incidentally affect the exercise of national banks' real estate lending powers.  *See* 12 C.F.R. §§ 34.4(a)–(b) (2011).  District courts in other circuits have concluded that "[i]n contrast to ... specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes, and tort ... [are] not to be preempted" by the NBA.  *Baldanzi v. WFC Holdings Corp.*, No. 07 CIV 9551. LTS GWG, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) (collecting cases).  The Court assumes for purposes of this motion only that Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing are not preempted by the NBA and analyzes them on under Rule 12(b)(6).

[16]  The essential elements of a breach of contract claim in Texas are:  "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Hurd*, 880 F. Supp. 2d at 759 (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

*Home Loans Servicing, LP*, No. CIV.A. H-10-4224, 2011 WL 2470733, at *2 (S.D. Tex. June 20, 2011) (citations omitted). If the contract does not show a clear and express intent to benefit the third party, or if it otherwise "confers only an indirect, incidental benefit to the third party," then the third party cannot enforce the contract. *Strange*, 2012 WL 987584, at *2 (citing *Tawes*, 340 S.W.3d at 425).

### 1.    *Servicer Participation Agreement*

Plaintiff alleges that the Servicer Participation Agreement (SPA) between Defendant and Fannie Mae was "a valid and enforceable contract" in which Defendant agreed to comply with HAMP. (doc. 1-6 at 19.) Defendant allegedly breached the SPA by: (1) failing to properly determine whether he qualified for a HAMP modification, (2) imposing requirements on his application not required by the SPA, (3) demanding unnecessary documentation, and (4) failing to obtain "waivers or approvals from the investor" to carry out the modifications under HAMP. (*Id.* at 20.) While he acknowledges that he was not a party to the SPA, he claims to be an "intended third-party beneficiar[y]." (*Id.* at 19.)

HAMP was established by the U.S. Department of the Treasury under the Emergency Economic Stabilization Act of 2008 (EESA) as part of its "efforts to stabilize the country's housing and financial system." *Strange*, 2012 WL 987584, at *2 (citing 12 U.S.C.A. § 5201 (West 2010)). Pursuant to HAMP, banks may establish contracts (SPAs) with the federal government to provide mortgage borrowers with loan modifications in exchange for certain financial incentives. *Id.* (citations omitted). Courts have held that "HAMP does not create a private right of action for

borrowers against lenders and servicers."[17] *Geske v. Wells Fargo Bank, Nat. Ass'n*, No. 3:11-CV-3337-L, 2012 WL 1231835, at *6 (N.D. Tex. Apr. 12, 2012); *see also Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2013 WL 246860, at *3 (N.D. Tex. Jan. 21, 2013) (collecting cases). Courts in this circuit have also required evidence of a clear and express intent by the contracting parties to a given SPA to directly benefit borrowers before implying third-party beneficiary status. *See, e.g.*, *Cade*, 2011 WL 2470733, at *2–3; *see also Strange*, 2012 WL 987584, at *3 ("While compliance with the HAMP guidelines and directives yields certain benefits to [borrowers] in the form of loan modifications and standardized foreclosure practices, this does not render [them] third-party beneficiaries of [a bank's] [SPA] with the Treasury Department.")[18]

Here, Plaintiff conclusorily asserts that he is an intended third-party beneficiary of the SPA between Defendant and the federal government. (doc. 1-6 at 19.) This bare allegation does not meet his "difficult burden" of showing his intended third-party beneficiary status. First, he does not point to any language in HAMP or the EESA, or otherwise allege any facts, showing a legislative intent to grant borrowers a private remedy under HAMP. Likewise, he fails to identify specific provisions of the SPA that clearly and fully spell out the contracting parties' intent to benefit him and other

---

[17] Some courts have relied on *Astra USA, Inc. v. Santa Clara Cty.*, 131 S. Ct. 1342 (2011) to hold that borrowers lack prudential standing to sue as third-party beneficiaries for a lender's purported breach of its SPA with the federal government. *See, e.g.*, *Strange*, 2012 WL 987584, at *3; *Cade*, 2011 WL 2470733, at *2–3. In *Astra*, a county filed a class action lawsuit against pharmaceutical manufacturers that were allegedly overcharging for certain drugs in violation of pricing agreements between the manufacturers and the federal government. *Astra*, 131 S. Ct. 1345. The Supreme Court held that the pricing agreements "simply incorporate[d] statutory obligations and record[ed] the manufacturers' agreement to abide by them." *Id.* at 1348. Finding that Congress had not "meant to leave open the prospect of third-party beneficiary suits," and noting that a "third-party suit to enforce an ... agreement, [was] in essence a suit to enforce the statute," the Court held that the plaintiffs lacked standing as third-party beneficiaries to sue for any breach of those agreements. *Id.* at 1348–50.

[18] *Compare Marques v. Wells Fargo Home Mortgage, Inc.*, No. 09–1985–L, 2010 WL 3212131, at *4 (S.D. Cal. Aug.12, 2010) (holding that the plaintiffs could sue as third-party beneficiaries for breach of an SPA because although not expressly stated, a finding "of intended beneficiary status is not conditioned on such 'formalistic recitals'").

borrowers. He therefore fails to state a breach of contract claim based on Defendant's alleged breach of the SPA. *See Burr*, 2012 WL 1059043, at *5 (dismissing breach of contract claim where the plaintiffs failed to allege "facts clearly evidencing a legislative intent to provide borrowers with a legal cause of action for breach of contract under HAMP"); *Cade*, 2011 WL 2470733, at * 4 (dismissing breach of contract claim in part because the plaintiffs "ha[d] not alleged any specific language in the SPA that point[ed] towards intended third-party beneficiary status for borrowers").

### 2. Consent Judgment

According to the complaint, Defendant breached its purported obligations under its Consent Judgment with the federal government by: (1) failing to give Plaintiff copies of his payment history, the promissory note, and any assignments of his mortgage, (2) not pursuing "all loss mitigation options," and (3) initiating the foreclosure while his HAMP application was still pending. (doc. 1-6 at 7–8, 10.) Plaintiff does not allege that he was an intended third-party beneficiary to the Consent Judgment, and fails to allege any facts or point to any provision of the Consent Judgment that shows a clear and express intent on part of the contracting parties to make him and other borrowers third-party beneficiaries. Accordingly, he also fails to state a breach of contract claim based on Defendant's purported breach of the Consent Judgment.

### 3. Defendant's Servicing Guidelines

Plaintiff alleges that Defendant's servicing guidelines "clearly show" that it participates in the Making Home Affordable (MHA) program and has "adopted the guidelines set forth in the [corresponding] Handbook." (doc. 1-6 at 9.) Liberally construed, the complaint alleges that Defendant breached its servicing guidelines by not giving Plaintiff any of the "loss mitigation options" available to him under the Handbook. (*See id.* at 9–10.) Nonetheless, Plaintiff does not

allege any facts giving rise to a reasonable inference that either the Handbook or Defendant's servicing guidelines constitute a contract. *See Wildy*, 2013 WL 246860, at *3 (explaining that the "Handbook ... was established to provide *guidelines* for servicers in the ... MHA program") (emphasis in *Wildy*). Even if the servicing guidelines were a contract, Plaintiff still fails to show that he and other borrowers were meant to be third-party beneficiaries under them. Accordingly, he fails to state a breach of contract claim on this theory as well. *See id.*

**B.      Duty of Good Faith and Fair Dealing**

Defendant contends that Plaintiff's claim for breach of the duty of good faith and fair dealing is subject to dismissal because "Texas law does not recognize the duty on which Plaintiff relies." (doc. 6 at 18.) Plaintiff alleges that "a covenant of good faith and fair dealing is implied in every contract", and that Defendant breached this covenant and "intentionally failed to act in good faith or to deal fairly with [him] by failing to follow the ... mortgage servicing guidelines as described [in the complaint]" and required by the National Housing Act (NHA) and HAMP. (doc. 1-6 at 10, 13, 20–21.)

"In Texas, the duty of good faith and fair dealing applies in limited circumstances involving a 'special relationship' between the parties, such as between insurers and insureds, principal and agent, joint venturers, and partners." *Franklin v. BAC Home Loans Servicing, LP*, No. 3:10-CV-1174-M, 2012 WL 2679496, at *6 (N.D. Tex. June 6, 2012), *recommendation adopted*, 2012 WL 2688809 (N.D. Tex. July 5, 2012) (citing *Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir. 1992)). No such duty exists in a mortagee-mortgagor relationship. *See id.*; *see also Fraley v. BAC Home Loan Servicing, LP*, No. 3:11-CV-1060-N-BK, 2012 WL 779130, at *4 (N.D. Tex. Jan 10, 2012), *recommendation adopted*, 2012 WL 779654 (N.D. Tex. Mar. 9, 2012) (explaining that the

UCC's duty of good faith and fair dealing does not apply to a lender-borrower relationship). Absent contractual provisions expressly creating a duty of good faith and fair dealing between a mortgagee and a mortgagor, a court will not imply such duty under Texas law. *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 812 (N.D. Tex. 2012); *see also UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet denied). Because Plaintiff does not identify any provision in the deed of trust or in any other contract creating a duty of good faith and fair dealing between him and Defendant, his breach of contract claim for breach of the duty of good faith and fair dealing also fails and should be dismissed. *See Fraley*, 2012 WL 779130, at *4.

## C.     Implicit Claims

Although not expressly listed as claims, the allegations in Plaintiff's complaint may be liberally construed as asserting claims for breach of a unilateral contract and promissory estoppel. (*See* doc. 1-6 at 14–15.) The Court should *sua sponte* dismiss these claims on its own motion.[19]

### 1.     Unilateral Contract

Plaintiff alleges that "Defendant offered to consider [him] for a modification under HAMP" and other "loss mitigation options in order to cure the default of the loan." (doc. 1-6 at 14–15.) Defendant purportedly breached this offer "when it failed to consider Plaintiff's requests for the available relief options" and initiated the foreclosure. (*Id.* at 16.) These allegations could be liberally construed as asserting a claim for breach of a unilateral contract. *See Enis v. Bank of Am.,*

---

[19] The Court may *sua sponte* dismiss a claim on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of the intention to dismiss and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)). The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

*N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *3 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.) (the plaintiff alleged that the defendant "breached an oral, unilateral contract" by foreclosing after promising "not to foreclose during the pendency of the loan modification application"); *McDonald v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-2691-B, 2012 WL 2122168, at *4 (N.D. Tex. June 11, 2012) (to same effect).

In Texas, "a unilateral contract is 'created by the promisor promising a benefit if the promisee performs.'" *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011) (citing *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009)). The promise binds the promisor only when the promisee accepts the offer by rendering performance. *Id.* (citing *Johnston v. Kruse*, 261 S.W.3d 895, 898 (Tex. App.—Dallas 2008, no pet.)). Until the promisee performs, the contract is merely an illusory promise that "lacks mutuality ... and is unenforceable." *Id.* Here, even if it is assumed that Defendant promised to consider Plaintiff for foreclosure alternatives, the promise remained illusory and unenforceable until he accepted the offer through performance. *See Watson*, 814 F. Supp. 2d at 732. He does not identify the performance that he was required to render, let alone state that he actually performed. Any claim for breach of a unilateral contract fails for this reason. *See id.*

In addition, courts have held that an agreement to modify an existing loan must comply with the statute of frauds. *Enis*, 2012 WL 4741073, at *3; *see also Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012). The Texas statute of frauds provides that a loan agreement that exceeds $50,000 in value is not enforceable unless it "is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code Ann. § 26.02(b) (West 2011). Section 26.02(b), "makes unenforceable oral

modifications to a loan agreement ... unless they fall within an exception to the statute of frauds or do not 'materially alter the obligations imposed by the original contract.'" *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 571 (S.D. Tex. 2012) (citation omitted). Agreements to modify the lending terms, such as the interest rate, the amounts of installments, security rights, and the remaining balance of the loan have been held to be material modifications that must be in writing. *See Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984); *see also Edward Scharf Associates, Inc. v. Skiba*, 538 S.W.2d 501, 502 (Tex. Civ. App.—Waco, 1976, no writ.).

Here, Plaintiff alleges that in 2008 he obtained a loan modification from Defendant that changed the amount of his monthly payments. (*See* doc. 1-6 at 6.) In May 2011, he again contacted Defendant for help and Defendant offered to consider him for a HAMP modification and other foreclosure alternatives. (*Id.* at 6, 14–16.) Notably, he asserts no facts showing either that his mortgage (or the amount to be modified) was less than $50,000[20] or that Defendant's alleged offer was at some point reduced to writing. (*See id.*) Accordingly, unless an exception applies, any claim that Defendant's alleged offer to help him created a unilateral contract is barred by the statute of frauds. *See Wiley*, 2012 WL 1945614, at *6.

Plaintiff's allegations that he "took Defendant at its word, believing that it would consider [him] for a modification and other alternative[s]" and that he "relied on Defendant's representations" to help him avoid foreclosure essentially assert "promissory estoppel." *See McDonald*, 2012 WL 2122168, at *5. "Promissory estoppel is a narrow exception to the statute of frauds." *Hurd*, 880 F. Supp. 2d at 761 (citation omitted). To plead the promissory estoppel exception, a plaintiff must

---

[20] The original promissory note shows that Plaintiff borrowed $120,511.00 from NTRMC. (*See* doc. 7-1 at 2.) In his complaint, Plaintiff does not allege that by May 2011, the principal on his mortgage was less than $50,000. (*See* doc. 1-6.)

establish: (1) a promise; (2) reliance on the promise that was foreseeable by the promisor; and (3) substantial detrimental reliance by the promisee. *Id.* (citing *Metropolitan Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, 584 (5th Cir. 1998). The plaintiff must also show that "the promisor promised to sign a written document complying with the statute of frauds." *McDonald*, 2012 WL 2122168, at *5; *see also Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). That is, the agreement which was the subject of the oral promise "must be in writing at the time the oral promise to sign was made." *Hurd*, 880 F. Supp. 2d at 761 (citations omitted). Plaintiff does not allege that there was an existing document in which Defendant agreed to consider him for a loan modification and other foreclosure alternatives at the time it made the alleged representations. Accordingly, any claim for breach of a unilateral contract is barred by the statute of frauds and should be *sua sponte* dismissed with prejudice. *See McDonald*, 2012 WL 2122168 at *5; *Hurd*, 880 F. Supp. 2d at 761.

### 2. Promissory Estoppel

By alleging that Defendant offered to consider him for foreclosure alternatives and help him avoid foreclosure and that he relied on these representations, Plaintiff appears to assert a promissory estoppel claim. (*See* doc. 1-6 at 14–15.) Although normally a defensive theory, promissory estoppel is also available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise. *Hurd*, 880 F. Supp. 2d at 761; *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex. App.—El Paso 2004, no pet.). To prevail, the plaintiff must show that the promise at issue was "a promise to sign an already existing written agreement that would itself satisfy the statute of frauds." *Hurd*, 880 F. Supp. 2d at 761 (citations omitted).

Here, the promises at issue were that Defendant would consider Plaintiff for foreclosure alternatives and would help him avoid foreclosure. (doc. 1-6 at 14–15.) Because Plaintiff does not

allege that Defendant promised to sign an existing document that reflected these representations, any promissory estoppel claim also fails and should be *sua sponte* dismissed with prejudice. *See Hurd*, 880 F. Supp. 2d at 761.

Because Plaintiff fails to state a viable breach of contract claim under any theory, this claim should be dismissed with prejudice for failure to state a claim.

## V. OTHER CLAIMS

### A. Violations of HUD Regulations and the NHA

Defendant contends that Plaintiff's claim for violation of HUD regulations is subject to dismissal because they do not provide a private right of action. (doc. 6 at 18–19.) It further contends that any claim for failure to comply with the notice requirements under the National Housing Act (NHA) also fails because this statute likewise does not give borrowers a private right of action. (*Id.*) Plaintiff alleges that Defendant violated certain HUD regulations by failing to: (1) send him a delinquency notice as required by 24 C.F.R. § 203.602, (2) contact, or make reasonable attempts, to contact him as required by 24 C.F.R. § 203.604(b), (3) conduct, or make a reasonable effort to arrange, a face-to-face meeting with him prior to foreclosing as required by 24 C.F.R. § 203.604(b), (4) conduct a loss mitigation evaluation prior to foreclosing as required by 24 C.F.R. §§ 203.605, (5) and provide him with a default notice as required by 24 C.F.R. § 650. (doc. 1-6 at 22.) He also claims that Defendant "failed to comply with the requirements of the [NHA]" by "denying [him] access to ... pre-foreclosure counseling." (*Id.* at 13.)

It is well established that the "NHA and the [HUD] regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to a duty owed nor remedy for failure to follow." *Leggette v. Washington Mut. Bank, FA*, No. 3:03-

CV-2909-D, 2005 WL 2679699, at *3 (N.D. Tex. Oct. 19, 2005) (Fitzwater, C.J.) (quoting *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977)).  As the Fifth Circuit has explained, "[n]o evidence exists demonstrating that Congress intended to create a private cause of action under the National Housing Act." *Roberts*, 556 F.2d at 361; *see also Moses v. Banco Mortgage Co.*, 778 F.2d 267, 271–72 (5th Cir. 1985) (holding that "neither the Federal Housing Act nor the HUD regulation [at issue] was intended directly to benefit" private plaintiffs).  District courts have therefore refused to imply a private right of action for violations of HUD regulations.  *See, e.g.*, *Bassie v. Bank of Am., N.A.*, No. 4:12-CV-00891, 2012 WL 6530482, at *3–4 (S.D. Tex. Dec. 13, 2012) (collecting cases); *Baker v. Countrywide Home Loans, Inc.*, No. CIV A 308-CV-0916-B, 2009 WL 1810336, at *3 (N.D. Tex. June 24, 2009).  Some courts have recognized "that a violation of HUD regulations may create a private cause of action if the regulations are 'explicitly incorporated' into [an] agreement."  *Bassie*, 2012 WL 6530482, at *4; *Baker*, 2009 WL 1810336, at *5.

Here, Plaintiff avers only that Defendant violated the NHA and various HUD regulations, but he does not allege that any provisions of the NHA or any HUD regulations were expressly incorporated into the note or deed of trust, and he fails to state any facts or cite to any provision in the loan documents showing that such was the case.  Accordingly, his claim for violations of the NHA and its accompanying HUD regulations fails and should be dismissed.  *See Bassie*, 2012 WL 6530482, at *4; *see also Denley v. Vericrest Fin., Inc.*, No. CIV.A. H-12-992, 2012 WL 2368325, at *2 (S.D. Tex. June 21, 2012) (granting motion to dismiss where the plaintiff "ha[d] not alleged ... an independent cause of action based upon HUD regulations" because he "neither allege[d] nor point[ed] to any language in the Deed of Trust factually to support [the] assertion" that the deed of trust incorporated the regulations).

## B.   DTPA

Defendant moves to dismiss Plaintiff's claim under the Deceptive Trade Practices Act (DTPA) on grounds that he is not a "consumer" as defined by the Act.[21]  (doc. 6 at 19–20.)

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)).  The DTPA defines "consumer" in relevant part, as "an individual ... who seeks or acquires by purchase or lease, any goods or services."   Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007).  To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint."  *Hurd*, 880 F. Supp. 2d at 765 (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to get a loan is not a consumer under the DTPA. *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)).  However, a borrower may become a consumer if he seeks to acquire goods or services with the loan, and the goods or services form the basis of his DTPA complaint.  *See id.* (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

Here, Plaintiff conclusorily states that Defendant violated "the state's consumer protection

---

[21]  Defendant also argues that this claim is preempted by the NBA.  (*See* doc. 6 at 13–16.)  As noted, some federal courts have held that the NBA does not preempt consumer protection laws of general applicability.  *See Baldanzi*, 2008 WL 4924987, at *2–3.  Defendant further contends that this claim is subject to dismissal because it is factually unsupported and is barred by the economic loss rule.  (doc. 6 at 19.)  Because the consumer status issue is dispositive, it is not necessary to reach these arguments.

laws" by "engag[ing] in a pattern of unfair and deceptive practices." (doc. 1-6 at 10.) He claims that the foreclosure and Defendant's "failure to discharge [its] required loan modification obligations" constituted "unfair and deceptive practices" that "resulted in injury to [him] and [to] Texas citizens who have had home loans serviced by [Defendant]." (*Id.* at 9, 19.) Even if taken as true, these allegations fail to show Plaintiff is a consumer under the DTPA. "Although one who borrows money to buy a house can be a consumer under the DTPA because that person's objective is to buy a home, subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'goods or services' element of the DTPA." *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 6 (N.D. Tex. Jan. 20, 2012) (citation omitted). According to his own complaint, Plaintiff is not a consumer because his objective was not to seek or acquire the Property with a new mortgage, but rather, to modify his existing mortgage. (*See* doc. 1-6 at 6, 10.) His DTPA claim therefore fails and should be dismissed with prejudice. *See Hurd*, 880 F. Supp. 2d at 765–66.

## C.     Fraud

Defendant moves to dismiss Plaintiff's fraud claim arguing that his allegations contravene the express language of the deed of trust.[22] (doc. 6 at 21–22.)

---

[22] Defendant also argues that Plaintiff's fraud claim is barred by the statute of limitations and the economic loss doctrine. (doc. 6 at 22–23.) The statute of limitations defense does not dispose of this claim at this stage of the proceedings because equitable relief from the statute of limitations may apply. Texas law provides two equitable remedies to toll the statute of limitations for fraud claims, the "discovery rule" and "fraudulent concealment." *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65, 67 (Tex. 2011); *see also Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). Under the discovery rule, "[t]he statute of limitations … does not begin to run until the fraud is discovered, or until the plaintiff acquires such knowledge as would lead to its discovery if reasonable diligence was exercised." *Berkley v. Am. Cyanamid Co.*, 799 F.2d 995, 998 (5th Cir. 1986) (citing *Whatley v. National Bank of Commerce*, 555 S.W.2d 500, 505 (Tex. Civ. App.—Dallas 1977, no writ)). Similarly, fraudulent concealment "tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod. Co.*, 342 S.W.3d at 67 (citation omitted). The Fifth Circuit has held that if there is "no reason for the landowner to believe that a [fraudulent] claim has been made on his property," then he has "no reason to be checking regularly [the property records] to see whether such a filing has been made." *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 368 (5th Cir. 2012). The equitable loss rule also does not dispose of the claim because several

In Texas, the elements of simple common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

Plaintiff alleges that the appointment of substitute trustee was "invalid and fraudulent" because the vice president was "an attorney" and not "the vice president of loan documentation for [Defendant]." (doc. 1-6 at 15.) He contends that the vice president and others employed by his law firm "are known to execute documents without proper legal authority to do so." (*Id.* at 16.) Moreover, the appointment was allegedly "robo-signed" [23] by the vice-president and was therefore "fraudulent" and "most likely [a] forgery." (*Id.*) He claims that "even if the appointment was not illegally 'robo-signed,'" it was still "invalid and fraudulent" because only NTRMC, the original lender, had could appoint a substitute trustee. (*Id.*)

Plaintiff's contention that only NTRMC could appoint a substitute trustee contravenes language in the deed of trust expressly providing that "successors and assigns of Lender and

---

courts in the Fifth Circuit have held that this doctrine does not bar fraud claims. *See, e.g.*, *Gruber v. Deuschle*, No. A:300-CV-0017-L, 2002 WL 523957, at *7 (N.D. Tex. Apr. 5, 2002) (fraudulent inducement claims are not subject to the economic loss rule under Texas law); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 1:07-CV-111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties had an independent duty not to commit the intentional tort of fraud); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No. No. 4:10-CV-144, 2011 WL 1627115, at *12 (E.D. Tex. Apr. 7, 2011) (holding that the economic loss rule does not apply to fraud claims).

[23] The term "robo-sign" refers to the "speed with which [individuals] rubber-stamp[] mortgage documents without checking their accuracy." *See Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11-CV-3680, 2012 WL 2568178, at *1 n.1 (S.D. Tex. June 28, 2012) (citation omitted).

Borrower" would be bound by it.  (*See id.* at 32.)  Even if his interpretation was correct, it could not plausibly entitle him to relief.  First, his bare assertion that the appointment was "robo-signed" fails to raise a reasonable inference that it was fraudulent.  *See Masuku v. Bank of Am., N.A.*, No. CIV.A. H-11-1443, 2012 WL 3528006, at *4 (S.D. Tex. Aug. 14, 2012) (noting that the plaintiff failed to "explain how the allegation that [the defendant's employee] was a 'robo-signer' support[ed] an inference of fraud); *Islamic Ass'n*, 2012 WL 2196040, at *3 (dismissing fraud claim in part because the plaintiff's "allegation that the signature of [the defendant's agent] [was] known to be robo-signed and/or forged' [did not] state a plausible claim that the … appointment of substitute trustee [was] likely 'fraudulent and/or forged'").  Ultimately, his fraud claim fails because he does not allege that Defendant made a material, false representation *to him* upon which *he* relied to his detriment.  *See Grisham*, 2012 WL 2568178, at *4 (dismissing fraud claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to *him*") (emphasis in *Grisham*).  Plaintiff's fraud claim should be dismissed for failure to state a claim upon which relief can be granted.

**D.    Negligence**

Defendant contends that Plaintiff fails to state a negligence claim as a matter of law because Defendant did not owe him a legal duty.[24]  (doc. 6 at 24–25.)

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *Boudreaux v. Swift*

---

[24] Defendant also argues that Plaintiff's negligence claim fails because it is based on Defendant's purported offer to consider him for a HAMP modification but HAMP does not provide a private right of action, and because it is barred by the statute of frauds and the economic loss rule.  (doc. 6 at 25–26.)  Because the issue of legal duty is dispositive, there is no need to address these other arguments.

*Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). A legal duty "is a general obligation imposed by law 'apart from and independent of promises made and ... the manifested intentions of the parties, to avoid injury to others.'" *UMLIC VP LLC*, 176 S.W.3d at 611 (citing *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991). Accordingly, to establish a legal duty between parties to a contract, the "plaintiff must show there is a special relationship between [them]." *Carrington v. Bank of Am., N.A.*, No. CIV.A. H-12-1542, 2013 WL 265946, at *7 (S.D. Tex. Jan. 17, 2013) (citation omitted). Because no special relationship exists between a mortgagor and a mortgagee, courts have held that "there is no duty of care" between them that would give rise to a negligence claim.[25] *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2010 WL 1026968, at *8 (E.D. Tex. Feb. 16, 2010), *recommendation adopted*, 2010 WL 1026969 (E.D. Tex. Mar. 17, 2010); *see also UMLIC VP LLC*, 176 S.W.3d at 611.

Here, Plaintiff alleges that Defendant "falsely and negligently represented" that it "would help [him] and would consider [him] for a variety of ... loss mitigation options." (doc. 1-6 at 22.) He claims that he "justifiably relied on these statements," believing that "Defendant was the servicer of his mortgage loan and had authority to approve the requested modification," and that these representations were false, and Defendant did not exercise reasonable care in communicating them to him, because it "schedul[ed] ... a foreclosure sale while his loan modification request [was] pending." (*Id.*) He suffered damages as a result, including "escalating late fees, penalties, and other charges." Even if taken as true, Plaintiff's allegations fail to state a negligence claim as a matter of

---

[25] "The only duty that courts have imposed between a creditor and a debtor or guarantor is that the 'secured party owes both the note maker and the guarantor the duty to discharge its respective contractual obligations properly.'" *UMLIC VP LLC*, 176 S.W.3d at 613 (citations omitted).

law because he does not allege facts showing Defendant owed him a legal duty. *Carrington*, 2013 WL 265946, at *7; *see also Milton v. U.S. Bank Nat. Ass'n*, No. 12-40742, 2013 WL 264561, at *3 (5th Cir. Jan. 18, 2013) (per curiam) (finding that the plaintiff's "negligence and gross negligence claims fail[ed]" because the defendant-mortgagee owed him no legal duty giving rise to such claims). Accordingly, Plaintiff's negligence claim should be dismissed.

## E. Negligent Misrepresentation

Plaintiff's allegations regarding his negligence claim could also be liberally construed as asserting a claim for negligent misrepresentation. (*See* doc. 1-6 at 22.)

A claim for negligent representation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Chance v. Aurora Loan Services, L.L.C.*, No. 3:11-CV-1237-BH, 2012 WL 912939, at *5 (N.D. Tex. Mar. 19, 2012) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) and *Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied)). The false information complained of "must be a misstatement of an existing fact rather than a promise of future conduct." *Id.*; *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625–26 (N.D. Tex. 2011).

Here, Plaintiff fails to state a claim for negligent misrepresentation because Defendant's purported representations that it "would" consider him for foreclosure alternatives and "would" help him avoid foreclosure were not statements of existing fact but rather of future actions. *See Milton*,

2013 WL 264561, at *1–2 (finding that the plaintiff failed to state a claim based on the defendant's purported statement "that the Property would not be foreclosed upon while his [HAMP] application was pending" because "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort")(citations omitted); *see also Chance*, 2012 WL 912939, at *5 (dismissing negligent misrepresentation claim where the alleged misrepresentation was that "the foreclosure process would not proceed").  Any claim for negligent misrepresentation should therefore be *sua sponte* dismissed for failure to state a claim.

## F.    RESPA

Plaintiff's complaint appears to assert a claim under the Real Estate Settlement Practices Act (RESPA) by stating that he sent Defendant a "Qualified Written Request" (QWR), requesting that Defendant produce copies of "all transfers and assignments of the Original Deed of Trust and Original Note" in order to "verify that Defendant[]" was "in fact the 'Holder in Due Course.'"  (doc. 1-6 at 5.)  He alleges that Defendant did not produce these documents "in light of the stated dispute in [his] QWR."  (*Id.* at 11.)  The purported QWR attached to the complaint states that he sent it "pursuant to RESPA 12 U.S.C. Section 2605 (c)" and it requests numerous documents, including "a full accounting of payments made," a "complete ... transactional history," and all documents relating to the promissory note.  (*See id.* at 35–37.)

A QWR is defined as:

A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, . . . that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [that] . . . includes a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. § 2605(e)(1)(B)(West 2011).  The QWR must relate to the "servicing" of the loan,

which is defined as "receiving any scheduled periodic payments from a borrower" and "making the payments of principal and interest ... received from the borrower as may be required pursuant to the terms of the loan." *Id.* §§ 2605(i)(3), 2605(e)(1)(A). Under RESPA, if a loan servicer receives a QWR from a borrower requesting information about the loan, the servicer must acknowledge the receipt of the QWR within 20 days unless it takes other action requested by the borrower within that period. 12 U.S.C.A. §§ 2605(e)(1)–(2); 24 C.F.R. § 3500.21(e) (2012). To recover in a cause of action, a "plaintiff must allege actual damages resulting from a violation of § 2605." *Platero v. Bank of Am., N.A.*, No. 3:11-CV-3421-M, 2012 WL 2368465, at *3 (N.D. Tex. May 25, 2012), *recommendation adopted*, 2012 WL 2373297 (N.D. Tex. June 21, 2012); *see also* 12 U.S.C. § 2605(f)(1)(A).

Here, Defendant's purported failure to produce copies of the note, deed of trust, and any assignment of these documents could not plausibly entitle Plaintiff to relief because Defendant was not required to produce these documents in order to foreclose. His request for documents unrelated to the note, such as an accounting and a complete transactional history could reasonably relate to the servicing of his mortgage, however. (*See* doc. 1-6 at 35–37); *see also* 12 U.S.C. §§ 2605(i)(3), 2605(e)(1)(A). Nevertheless, he fails to allege any facts giving rise to a reasonable inference that he suffered actual damages from Defendant's alleged failure to respond to his QWR. To the extent that Plaintiff asserts a RESPA claim, it should be *sua sponte* dismissed for failure to state a claim. *See Platero*, 2012 WL 2368465, at *3 (dismissing RESPA claim where the plaintiff failed to allege any facts showing that he suffered actual damages as a result of the purported violation).

## G. Declaratory Relief

Defendant argues that Plaintiff's request for declaratory relief is "without basis" because it

is "premised on ... failed claims."  (doc. 6 at 33.)

Plaintiff seeks declaratory relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  This removed action may be construed as one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) (holding that "[w]hen a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act").

The federal Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.A. § 2201 (West 2010).  The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  The Act is an authorization and not a command and allows federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment.  *Id.*

### 1.    *Express Declarations*

Plaintiff expressly requests the following declarations: (1) Defendant must produce the

original promissory note "for inspection by Plaintiff" prior to foreclosing, (2) Defendant lacks standing to foreclose because it has "no legal or equitable rights in the Note or Deed of Trust," (3) the complaint is "being timely filed," and (4) "any attempt to foreclose ... is an action to collect a debt." (doc. 1-6 at 17–18, 27.) The first two requests are based on an invalid legal theory and the last two are not proper subjects for declaratory relief. These requests should therefore be dismissed.

### 2.  *Implied Requests for Declaratory Judgment*

Plaintiff alleges that the deed of trust "provides that Borrowers may bring an action in court to assert any defense to acceleration and foreclosure sale," and asserts the defenses of "waiver," "quasi-estoppel," and "unclean hands" against Defendant's acceleration and foreclosure. (doc. 1-6 at 14–15.) Although Defendant has not asserted any claims against Plaintiff, his "defense" allegations may be liberally construed as attempts to obtain declaratory relief that Defendant cannot accelerate the note or foreclose on the Property. *See Benavides v. EMC Mortg. Corp.*, No. CIV.A. 3-12-46, 2013 WL 416195, at *5 (S.D. Tex. Jan. 31, 2013) (addressing the plaintiffs' waiver and quasi-estoppel defenses on the merits because "the deed of trust explicitly [gave] [them] 'the right to bring a court action to assert the nonexistence of a default or any other defense ... to acceleration and sale'"); *Nolasco v. CitiMortgage, Inc.*, No. H–12–1875, 2012 WL 3648414, at *5 (S.D. Tex. Aug. 23, 2012) (same).[26]

### a.  Waiver

Plaintiff claims that by "offer[ing] to consider [him] for a modification under HAMP, ... Defendant waived its right to proceed with [the] foreclosure until it properly considered ... all of the

---

[26] Other courts have taken a different approach, however. In *Blakeney v. Wells Fargo Bank, N.A.*, No. CIV.A. H-12-0845, 2012 WL 6691122, at *7 (S.D. Tex. Dec. 21, 2012), for example, the court refused to entertain these defenses, finding that they were "not properly before the court" because "[n]one of the Defendants ha[d] brought a suit in court alleging a claim for relief" against the plaintiff.

available loss mitigation options."  (doc. 1-6 at 14.)

Under Texas law, a "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right."  *Wiley*, 2012 WL 1945614, at *6 (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)).  To prove waiver, a party must show "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.*  If waiver is based on inferences, the plaintiff "must show conclusive evidence that the opposite party 'unequivoc[ally] manifested' its intent to no longer assert its claim."  *Enis*, 2012 WL 4741073 (citation omitted).

Because Plaintiff's waiver defense is based on Defendant's alleged offer to consider modifying his mortgage, it is subject to the statute of frauds.  *See id.*  As discussed, Plaintiff does not allege that the amount to be modified was less than $50,000 or that Defendant's alleged representations were ever reduced to writing.  Accordingly, his waiver defense is barred by the statute of frauds, and any request for declaratory relief based on this defense should be *sua sponte* dismissed.  *See Enis*, 2012 WL 4741073, at *2; *McDonald*, 2012 WL 2122168 at *5.

b.    Quasi-Estoppel

Plaintiff also contends that the "quasi-estoppel" defense applies because Defendant "ignored the Handbook [and] the Consent Judgment" by failing "to consider [his] requests for the available relief options" prior to foreclosing.  (doc. 1-6 at 14–15.)

In Texas, "[e]stoppel by contract, also known as 'quasi estoppel,' forbids a party to a contract from taking a position inconsistent with the terms of the contract when that position prejudices another." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 639–40 (5th Cir. 2007) (citing *Johnson*

*v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721–22 (Tex. App.—Dallas 2004, no pet.)).  "The doctrine applies when it would be 'unconscionable to allow a person to maintain a position inconsistent with one to which ... he accepted a benefit.'" *Id.* (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)).  It "forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects."  *Benavides*, 2013 WL 416195, at *5  (citation omitted).  Notably, quasi-estoppel is only "a defensive theory" and "does not create a contract right that does not otherwise exist."  *Hassell v. Bank of Am., N.A.*, No. CIV.A. H-12-1530, 2013 WL 211154, at *4 (S.D. Tex. Jan. 18, 2013) (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981)).

Plaintiff contends that the foreclosure was inconsistent with Defendant's prior offer to consider his eligibility for a HAMP modification and other loss-mitigation alternatives, as well as with Defendant's voluntary "participat[ion] in the MHA program."  (doc. 1-6 at 15.)  He claims that it "would be unconscionable" and "unjust" "to permit Defendant to ... move forward with the foreclosure" and "ignore its obligations to ... Plaintiff."  (*Id.*)  To obtain relief, however, he must point to a specific provision in the deed of trust showing that he was entitled to a loan modification, or that Defendant was otherwise contractually obligated to provide him with foreclosure alternatives. *See Benavides*, 2013 WL 416195, at *5 (holding that "[e]ven if [the defendant] failed to follow the federal MHA, HAMP, or HAFA guidelines regarding foreclosure alternatives, that failure if it occurred, [was] irrelevant to [the defendant's] obligations to [the] Plaintiffs under the deed of trust"); *see also Nolasco*, 2012 WL 3648414, at *5 (to same effect).  Moreover, as discussed, any oral promise by part of Defendant to provide Plaintiff with foreclosure alternatives is barred by the statute of frauds.  Plaintiff cannot obtain declaratory relief based on his quasi-estoppel allegations,

and any request for declaratory relief on this basis should also be *sua sponte* dismissed. *See Hassell*, 2013 WL 211154, at *4.[27]

Because Plaintiff's complaint fails to state any viable claim against Defendant or demonstrate that a genuine controversy exists between the parties, any request for declaratory judgment should be dismissed. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## H.    Injunctive Relief

Defendant lastly contends that Plaintiff's request for injunctive relief cannot survive without a viable cause of action.  (doc. 6 at 33.)

"To obtain injunctive relief, plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Plaintiff seeks a temporary and permanent injunction to prevent Defendant from: (1) "moving forward with the [foreclosure] sale," (2) "tak[ing] possession,

---

[27] Plaintiff also asserts the equitable doctrine of "unclean hands" as a defense, and claims that Defendant "waived" its right to foreclose by failing to "fully evaluat[e] [his application] for all loss mitigation options available" and that allowing Defendant to proceed with the acceleration of the note and the foreclosure would "be inequitable, unjust, and ... unconscionable." (doc. 1-6 at 16–17.)  Although listed as a separate "defense," these allegations are just a variation of his waiver and quasi-estoppel defenses.  (*See id.* at 14–15.)  Because he has failed to show he is entitled to relief under his waiver and quasi-estoppel defenses, his "unclean hands" defense should also be *sua sponte* dismissed.

custody, and control of the Property," and (3) "remov[ing] [him] from the Property." (doc. 1-6 at 18, 27.) Because dismissal of Plaintiff's claims is warranted on the merits, he cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3. Accordingly, his request for injunctive relief should be denied.

## VI. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended his complaint since filing this action. While some of his

claims fail as a matter of law because they are premised on invalid legal theories, others fail because he cannot state all of the necessary elements. However, it does not appear that he has stated his best case to the Court with respect to his claims under RESPA and TDCPA §392.304(a). He should therefore be accorded an opportunity to amend his complaint to sufficiently state a claim for relief.

## VII. REMAINING DEFENDANTS

Plaintiff joined Maris L. Patton, R. Alcorn, and J. Frappier in this action as "substitute trustees." (doc. 1-6 at 2.) He alleges that the substitute trustees, acting as "agents" for Defendant, sent him the notices of acceleration and foreclosure. (*Id.* at 6.) As discussed, his allegations that Defendant lacked authority to issue these notices fail to state a claim for relief. He does not explicitly assert any other cause of action against the substitute trustees, and to the extent that he asserts against them the same claims that he asserts against Defendant, these are all subject to dismissal for failure to state a claim. Accordingly, the court should *sua sponte* dismiss this action against them as well. *See Turner*, 2011 WL 3606688, at *6 (dismissing action against a defendant who had not joined the motion to dismiss that was before the court; explaining that a "court has the authority to consider the sufficiency of a complaint and 'dismiss an action on its own motion as long as the procedure employed is fair') (citing *Carroll*, 470 F.3d at 1177) (internal quotation marks omitted)).

## VIII. RECOMMENDATION

If Plaintiff does not file an amended complaint that states a claim for relief within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's motion to dismiss should be **GRANTED** and all of Plaintiff's claims against all defendants should be dismissed with prejudice. If Plaintiff timely files an amended complaint, however, the motion

to dimiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED on this 26th day of February, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE